UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ALFONSO R. D'ABRUZZO,

Civil Action No. ____________

*Plaintiff,*

– against –

SPARTAN AUTO GROUP LLC d/b/a VICTORY MITSUBISHI and MUNICIPAL CREDIT UNION,

*Defendants.*
-------------------------------------------------------------------X

**COMPLAINT**

Plaintiff Alfonso R. D'Abruzzo ("Plaintiff"), by and through his undersigned counsel, alleges against Defendants Spartan Auto Group LLC d/b/a Victory Mitsubishi ("Victory Mitsubishi" or the "Dealership") and Municipal Credit Union ("MCU," and together with the Dealership, "Defendants") as follows:

**NATURE OF THE ACTION**

1. This action arises from a fraudulent and deceptive automobile transaction orchestrated by Victory Mitsubishi, a licensed motor vehicle dealer, at its Bronx dealership. On July 10, 2026, Victory Mitsubishi accepted Plaintiff's 2021 RAM 2500 pickup truck as a trade-in and agreed, in the very sale documents it prepared, that it would pay off the truck's outstanding loan balance of $25,345.00 to Bank of America as part of the transaction. A month later, Victory Mitsubishi still has not done so.

2. The consequences for Plaintiff have been immediate and continuing. He is now paying for two vehicles while possessing only one: the BMW he purchased

and financed from Victory Mitsubishi, and the truck he no longer owns or possesses, on which Bank of America continues to bill him. On July 28, 2026, Plaintiff was forced to pay $625.72 out of his own pocket on the trade-in loan that Victory Mitsubishi had promised to extinguish, solely to protect his credit. Meanwhile, upon information and belief, Victory Mitsubishi offered Plaintiff's truck for sale to the public the day after taking it.

3. Victory Mitsubishi also charged Plaintiff for services it never performed and fees it misdescribed. It collected registration and title fees but, upon information and belief, never submitted Plaintiff's registration or title application to the New York State Department of Motor Vehicles, leaving Plaintiff with only a dealer-issued temporary registration that expires on or about August 24, 2026. It also charged Plaintiff a $175.00 "documentation fee" that its own installment contract itemizes as paid "to STATE," even though its bill of sale concedes the charge is the Dealership's own optional processing fee and "NOT A DMV FEE."

4. When Plaintiff attempted to resolve these matters, Victory Mitsubishi stonewalled him: his repeated telephone calls went unanswered, or were met with text messages stating that no one with authority to help was available.

5. Upon information and belief, Plaintiff's experience is not an isolated incident but part of a pattern and practice of consumer abuse at Victory Mitsubishi that has drawn numerous consumer complaints and prior lawsuits.

6. Defendant Victory Mitsubishi's conduct violates the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), and its implementing regulation, Regulation Z, 12 C.F.R. Part 1026, as well as New York General Business Law § 349. Its

conduct also constitutes common law fraud, conversion, breach of contract under Article 2 of the New York Uniform Commercial Code, and negligent misrepresentation. Defendant MCU, as the holder of the retail installment contract, is subject to Plaintiff's claims to the extent set forth below.

7. Plaintiff seeks actual and statutory damages, treble and punitive damages, an order compelling the immediate payoff of the trade-in loan and completion of the Vehicle's registration, declaratory relief, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

**PARTIES**

8. Plaintiff Alfonso R. D'Abruzzo is an individual residing in Schenectady, New York, Schenectady County.

9. Upon information and belief, Defendant Spartan Auto Group LLC is a New York limited liability company with its principal place of business at 4070 Boston Road, Bronx, New York 10475, where it operates a dealership under the assumed name "Victory Mitsubishi." The Dealership is a registered motor vehicle dealer (New York State DMV facility no. 7123426) and holds a New York City Department of Consumer and Worker Protection secondhand automobile dealer license (license no. 2063808).

10. The Dealership is engaged in the business of selling and financing new and used motor vehicles to consumers. It regularly extends consumer credit that is payable by written agreement in more than four installments and for which a finance charge is imposed, and it was the person to whom the debt arising from Plaintiff's credit transaction was initially payable. The Dealership is therefore a

"creditor" within the meaning of TILA, 15 U.S.C. § 1602(g), and Regulation Z, 12 C.F.R. § 1026.2(a)(17).

11. Upon information and belief, Defendant MCU is a New York State-chartered credit union with its principal place of business at 22 Cortlandt Street, New York, New York 10007.

12. The Dealership assigned Plaintiff's retail installment contract to MCU without recourse, as reflected in the assignment provision on the signature page of the RISC, which the Dealership's finance manager executed on July 10, 2026. MCU is the holder of that contract and the lienholder on the Vehicle Plaintiff purchased, and Plaintiff has been directed to make his monthly payments to MCU.

13. The retail installment contract contains the notice required by the Federal Trade Commission's Holder Rule, 16 C.F.R. § 433.2, which provides: "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."

14. By operation of that notice and 16 C.F.R. § 433.2, MCU, as holder, is subject to all claims and defenses that Plaintiff could assert against the Dealership arising from this transaction, with Plaintiff's affirmative recovery against MCU not to exceed the amounts Plaintiff has paid under the contract. MCU is also liable under 15 U.S.C. § 1641(a) for any TILA violation apparent on the face of the disclosure statement and the documents assigned to it. MCU is joined so that

complete relief, including declaratory relief, may be afforded; except as stated herein, no independent misconduct is presently alleged against MCU.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, specifically TILA, 15 U.S.C. § 1601 *et seq.*, which further authorizes suit in any United States district court brought within one year of the violation, 15 U.S.C. § 1640(e). This action is brought within one year of the July 10, 2026, transaction.

16. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy as Plaintiff's federal claims.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants reside in this District and because a substantial part of the events and omissions giving rise to the claims occurred at the Dealership's place of business in Bronx County, within this District.

## FACTUAL ALLEGATIONS

18. On July 10, 2026, Plaintiff visited the Dealership at 4070 Boston Road, Bronx, New York, to purchase a vehicle.

19. Plaintiff agreed to purchase a used 2022 BMW X3, bearing VIN 5UX83DP06N9K31767, with 36,047 miles on its odometer (the "Vehicle"). The Dealership documented the transaction as deal number 29635, handled by its salesperson Alexander Fermin.

20. As part of the same transaction, Plaintiff traded in his 2021 RAM 2500 pickup truck, bearing VIN 3C6TR5EJ2MG509162 (the "Trade-In"). The Trade-In was encumbered by a loan from Bank of America (the "Bank of America Loan"), with a monthly payment of approximately $625.72.

21. To document the transaction, the Dealership prepared, and Plaintiff executed, a Retail Purchase Agreement/Bill of Sale (the "Purchase Agreement") and a Retail Instalment Contract on form LAW 553-NY-B-A-ea 9/24 (the "RISC"), each dated July 10, 2026.

22. Under the Purchase Agreement, the Vehicle's cash price was $44,500.00, plus a $425.00 GAP waiver charge, for a taxable selling price of $44,925.00, plus sales tax of $795.63. The Dealership also charged a $175.00 "dealer's optional fee for processing application," a $37.00 inspection fee, and a $65.00 estimated registration fee.

23. The Purchase Agreement and the RISC credited Plaintiff with a gross Trade-In allowance of $35,000.00, less a payoff of $25,345.00, described in the RISC's Itemization of Amount Financed as "Payoff Made By Seller" to "BANK OF AMERICA," yielding net trade-in equity of $9,655.00, which constituted Plaintiff's entire down payment.

24. The Dealership expressly agreed to pay off the Bank of America Loan. In addition to the "Payoff Made By Seller" itemization, the RISC contains a "Trade-In Payoff Agreement" providing, in substance, that the Seller relied on information from the buyer and/or the lienholder of the trade-in vehicle to arrive at the payoff amount shown in the Itemization of Amount Financed as the "Payoff Made by

Seller," that the buyer must pay the Seller any excess if the actual payoff amount is more than the amount shown, and that the Seller will refund any overage it receives from the prior lienholder if the actual payoff amount is less. The Trade-In Payoff Agreement describes the $25,345.00 figure as an estimate of the payoff, but nothing in it excuses the Dealership from making any payoff at all; more than a month after the transaction, the Dealership has remitted nothing toward the Bank of America Loan, in the estimated amount or otherwise.

25. The RISC's federal Truth-in-Lending disclosures state an annual percentage rate of 6.50%, a finance charge of $7,643.61, an amount financed of $36,342.63, a total of payments of $43,986.24, and a total sale price of $53,641.24, including the $9,655.00 down payment, payable in 72 monthly payments of $610.92 beginning August 9, 2026.

26. The RISC's Itemization of Amount Financed computes the amount financed using the $25,345.00 "Payoff Made By Seller" to Bank of America and itemizes $702.00 in "Other Charges Including Amounts Paid to Others on Your Behalf," consisting of a $425.00 GAP premium paid to MCU, a $65.00 registration fee under "Government License and/or Registration Fees," $37.00 "to DEALER" for a "VEHICLE INSPECTION FEE," and $175.00 "to STATE" for a "DOCUMENTATION FEE."

27. The $175.00 charge itemized in the RISC as paid "to STATE" is not a government charge at all. The Dealership's own Purchase Agreement describes it as the "Dealer's optional fee for processing application for registration and/or certification of title, and securing special or distinctive plates," and states in bold:

"THIS IS NOT A DMV FEE." Upon information and belief, the Dealership retained the $175.00 for itself and paid no part of it to New York State.

28. Plaintiff delivered the Trade-In, together with its keys and documents, to the Dealership, which accepted and took possession of it, and Plaintiff took delivery of the Vehicle the same day.

29. The Dealership issued Plaintiff a dealer temporary registration for the Vehicle of the kind authorized by New York Vehicle and Traffic Law § 420-a, valid for thirty days, and financed the registration, title, and related fees described above through the RISC.

30. Under Vehicle and Traffic Law § 420-a(4), a dealer that issues a temporary registration must first have in its possession all completed application forms, documents, fees, and charges required for the issuance of a registration, and must submit them to the Commissioner of Motor Vehicles within five calendar days of issuing the temporary registration.

31. Upon information and belief, the Dealership never submitted Plaintiff's registration application or remitted the associated fees to the Department of Motor Vehicles.

32. Plaintiff's temporary registration expired on or about August 9, 2026. Plaintiff has received no permanent registration or license plates, and he cannot now lawfully operate the Vehicle that he is financing.

33. Upon information and belief, on or about July 11, 2026 — the day after the transaction — the Dealership advertised and offered the Trade-In for sale to the public.

34. Despite its obligations, the Dealership did not pay off the Bank of America Loan at consummation or within any reasonable time thereafter. As of the filing of this Complaint, more than a month after the transaction, the Dealership has not paid off the Bank of America Loan at all.

35. The Bank of America Loan accordingly remains open in Plaintiff's name, with a balance of approximately $25,345.00 or more, and interest continues to accrue. Bank of America continues to bill Plaintiff as the obligor. The Dealership's own RISC warns that "late payments, missed payments, or other defaults" on an account "may be reflected in" the consumer's credit report, so the risk to Plaintiff's credit from the Dealership's failure to pay off the Bank of America Loan was known and foreseeable to the Dealership.

36. On July 28, 2026, in order to avoid delinquency, default, and damage to his credit, Plaintiff paid $625.72 from his own funds toward the Bank of America Loan — a payment on a truck he no longer owned or possessed.

37. Additional monthly payments on the Bank of America Loan continue to come due for as long as the payoff remains unmade, with the next payment due on or about August 28, 2026.

38. Plaintiff is now simultaneously obligated on both loans: his first monthly payment of $610.92 on the Vehicle came due on August 9, 2026, even as Bank of America continues to bill him $625.72 per month for the Trade-In that the Dealership took from him.

39. Throughout July and August 2026, Plaintiff repeatedly contacted the Dealership by telephone to demand that it pay off the Bank of America Loan and

complete his registration. His calls went unanswered, or he received text messages stating that no one with the power to help him was present. No manager or principal of the Dealership ever responded, and the Dealership has provided no payoff, no refund, no registration, and no explanation.

40. The Dealership meanwhile retains all of the benefits of the transaction: the proceeds of the Vehicle sale funded through MCU, the Trade-In it has offered for sale, the $25,345.00 it was obligated to remit to Bank of America, and the fees it collected for services it never performed.

41. Upon information and belief, the Dealership's conduct toward Plaintiff is part of a pattern and practice of like conduct toward other consumers, as reflected in, among other things, prior consumer lawsuits against the Dealership, including *Odea v. Spartan Auto Group, LLC d/b/a Victory Mitsubishi*, Index No. 810145/2025E (Sup. Ct. Bronx County), and *Simpson v. Victory Mitsubishi*, Index No. 805718/2021E (Sup. Ct. Bronx County), and in numerous consumer complaints to the Better Business Bureau and consumer protection authorities concerning unpaid trade-in payoffs, misrepresented fees, and registration failures.

42. As a direct and proximate result of Defendant Victory Mitsubishi's conduct, Plaintiff has suffered and continues to suffer actual damages, including out-of-pocket payments on the Bank of America Loan, interest accruing on a loan that should have been extinguished, fees paid for services never performed, exposure of his credit standing to delinquency and default reporting, the inability to lawfully operate the Vehicle he is financing, and the loss of use of his money.

**FIRST CAUSE OF ACTION**
**(Violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and Regulation Z — Against the Dealership, and Against MCU as Holder and Assignee)**

43. Plaintiff repeats and realleges paragraphs 1 through 42 as if fully set forth herein.

44. The purchase of the Vehicle was a consumer credit transaction, other than under an open end credit plan, entered into primarily for personal, family, or household purposes.

45. As the creditor, the Dealership was required to make accurate written disclosures of the material terms of the transaction in accordance with 15 U.S.C. § 1638(a) and 12 C.F.R. §§ 1026.17 and 1026.18, and those disclosures were required to reflect the actual terms of the legal obligation between the parties.

46. Among other things, TILA and Regulation Z required the Dealership accurately to disclose the "amount financed," computed by taking the cash price less the down payment and trade-in, 15 U.S.C. § 1638(a)(2)(A); an itemization of the amount financed, including each amount paid to third persons by the creditor on the consumer's behalf, identifying those third persons, 15 U.S.C. § 1638(a)(2)(B)(iii) and 12 C.F.R. § 1026.18(c)(1)(iii); the "finance charge," 15 U.S.C. §§ 1638(a)(3) and 1605(a) and 12 C.F.R. § 1026.4; the annual percentage rate, 15 U.S.C. § 1638(a)(4); the total of payments, 15 U.S.C. § 1638(a)(5); and the total sale price, 15 U.S.C. § 1638(a)(7).

47. The Dealership's disclosures were false and inaccurate. The RISC disclosed a $25,345.00 "Payoff Made By Seller" to Bank of America as a completed component of the transaction, used that figure to compute Plaintiff's $9,655.00

down payment and the amount financed, and thereby represented that the Dealership was paying $25,345.00 to Bank of America on Plaintiff's behalf as part of the transaction. The Dealership made no such payment, and the disclosures did not reflect the true terms and performance of the parties' legal obligation.

48. The disclosures were further false and inaccurate in that they itemized $175.00 as paid "to STATE" for a "DOCUMENTATION FEE" when that charge was in fact the Dealership's own optional processing fee, retained by the Dealership, and in that they itemized $65.00 as government registration fees that, upon information and belief, the Dealership never remitted to any government agency.

49. Amounts that the Dealership disclosed as paid to others on Plaintiff's behalf but in fact retained for itself constitute hidden finance charges within the meaning of 15 U.S.C. § 1605(a) and 12 C.F.R. § 1026.4(a). The Dealership's disclosures accordingly understated the finance charge and the annual percentage rate and misstated the amount financed and its itemization.

50. By the foregoing conduct, the Dealership violated 15 U.S.C. § 1638(a)(2), (a)(3), (a)(4), and (a)(5) and Regulation Z, 12 C.F.R. §§ 1026.17 and 1026.18.

51. Pursuant to 15 U.S.C. § 1640(a), Plaintiff is entitled to recover his actual damages, 15 U.S.C. § 1640(a)(1); statutory damages equal to twice the amount of the finance charge, 15 U.S.C. § 1640(a)(2)(A)(i); and his costs and reasonable attorneys' fees, 15 U.S.C. § 1640(a)(3). This action is timely under 15 U.S.C. § 1640(e).

52. MCU, as holder and assignee of the RISC, is subject to this claim pursuant to the Holder Rule notice contained in the RISC and 16 C.F.R. § 433.2, with recovery against MCU not to exceed the amounts paid by Plaintiff under the RISC, and is further liable pursuant to 15 U.S.C. § 1641(a) to the extent the violations are apparent on the face of the disclosure statement and the documents assigned.

**SECOND CAUSE OF ACTION**
**(Deceptive Acts and Practices — New York General Business Law § 349 — Against the Dealership, and Against MCU as Holder)**

53. Plaintiff repeats and realleges paragraphs 1 through 52 as if fully set forth herein.

54. New York General Business Law § 349(a) declares unlawful unfair, deceptive, or abusive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York.

55. The Dealership's acts and practices — promising in standard-form sale documents to pay off consumers' trade-in loans while failing to do so and disposing of the trade-ins; itemizing its own retained fee as a fee paid to New York State; collecting registration and title fees without registering the vehicle sold; and insulating itself from consumer complaints by refusing to respond to them — were and are deceptive acts and practices that are materially misleading to a reasonable consumer. The same conduct is also unfair and abusive in that, among other things, it takes unreasonable advantage of consumers' inability to protect their own interests and their reasonable reliance on the dealer to perform the payoff and registration functions that lie exclusively within the dealer's control.

56. The Dealership's conduct is consumer-oriented. It was undertaken through standard form contracts and standardized practices directed at the consuming public at large and, upon information and belief, has been repeated against numerous other consumers.

57. Plaintiff was injured by reason of the Dealership's deceptive acts and practices, and suffered actual damages as alleged above, including the out-of-pocket and duplicative loan payments, accrued interest, fees paid for services not rendered, and impairment of his ability to use and lawfully operate the Vehicle.

58. The Dealership's violations were willful and knowing.

59. Pursuant to General Business Law § 349(h), Plaintiff is entitled to enjoin the unlawful practices and to recover the greater of his actual damages or fifty dollars, together with treble damages of up to one thousand dollars for the Dealership's willful and knowing violations, and reasonable attorneys' fees. MCU, as holder, is subject to this claim to the extent of the amounts paid by Plaintiff under the RISC.

**THIRD CAUSE OF ACTION**
**(Common Law Fraud — Against the Dealership)**

60. Plaintiff repeats and realleges paragraphs 1 through 59 as if fully set forth herein.

61. On July 10, 2026, at the Dealership's Bronx place of business, the Dealership — through its salesperson Alexander Fermin and its finance personnel, acting within the scope of their employment, and through the transaction documents it prepared and presented for signature — represented to Plaintiff that:

(a) the Dealership would pay off the Bank of America Loan by remitting $25,345.00 to Bank of America as part of the transaction; (b) the $175.00 documentation fee was a fee payable to New York State; and (c) the Dealership would register the Vehicle and obtain title and plates for Plaintiff with the fees it collected for that purpose.

62. These representations were statements of existing fact and of the Dealership's present intention, and they were false when made.

63. The Dealership knew the representations were false when made, or made them recklessly and without regard for their truth. Upon information and belief, the Dealership did not intend to pay off the Bank of America Loan promptly or at all, as evidenced by, among other things, its offering of the Trade-In for sale the following day while the lien remained unpaid, its retention of the payoff funds and fees, its refusal to respond to Plaintiff's inquiries, and its pattern of like conduct toward other consumers.

64. The Dealership made the representations with the intent to induce Plaintiff to purchase and finance the Vehicle and to surrender the Trade-In and its equity.

65. Plaintiff justifiably relied on the representations. The payoff of the Bank of America Loan and the registration of the Vehicle were functions within the Dealership's exclusive control and are ordinarily performed by the dealer in the regular course of such transactions, and Plaintiff would not have entered into the transaction or surrendered the Trade-In had he known the truth.

66. As a direct and proximate result of the Dealership's fraud, Plaintiff has been damaged in an amount to be determined at trial.

67. The Dealership's conduct was willful, wanton, and morally culpable, warranting an award of punitive damages.

**FOURTH CAUSE OF ACTION**
**(Conversion — Against the Dealership)**

68. Plaintiff repeats and realleges paragraphs 1 through 67 as if fully set forth herein.

69. Plaintiff owned and lawfully possessed the Trade-In, in which he held equity of at least $9,655.00, and he delivered it to the Dealership for the express purpose, and on the express condition, that the Dealership satisfy the Bank of America lien and credit him the agreed equity.

70. The Dealership has exercised unauthorized dominion and control over the Trade-In in defiance of Plaintiff's rights: it took possession of the truck, offered it for sale for its own account, and has failed and refused to satisfy the lien or otherwise perform the conditions on which the truck was surrendered, leaving Plaintiff obligated on the loan secured by a vehicle the Dealership holds and is selling.

71. Plaintiff demanded that the Dealership perform, and the Dealership ignored and refused those demands; any further demand would be futile.

72. As a direct and proximate result, the Dealership has converted the Trade-In and Plaintiff's equity therein, and Plaintiff is entitled to damages in the

amount of the value of the Trade-In and his equity, together with consequential damages.

73. The Dealership's conduct was willful, wanton, and in conscious disregard of Plaintiff's rights, warranting an award of punitive damages.

**FIFTH CAUSE OF ACTION**
**(Breach of Contract — N.Y. U.C.C. Article 2 — Against the Dealership, and Against MCU as Holder)**

74. Plaintiff repeats and realleges paragraphs 1 through 73 as if fully set forth herein.

75. The Purchase Agreement and the RISC are valid and binding contracts between Plaintiff and the Dealership for the sale of goods governed by Article 2 of the New York Uniform Commercial Code, including N.Y. U.C.C. § 2-301, which obligates the seller to transfer and deliver in accordance with the contract.

76. Under those contracts, the Dealership was obligated, among other things, to pay $25,345.00 to Bank of America in satisfaction of the lien on the Trade-In; to credit Plaintiff the $35,000.00 trade-in allowance and $9,655.00 in net equity as his down payment; to apply the registration, title, and related fees it collected to registering and titling the Vehicle for Plaintiff; and to complete the transaction so that Plaintiff received a registered vehicle free of the burdens of his prior loan.

77. Plaintiff performed all of his obligations under the contracts, including by delivering the Trade-In, executing the transaction documents, and making the payments that have come due.

78. The Dealership materially breached the contracts by failing to pay off the Bank of America Loan and by failing to register and title the Vehicle notwithstanding its collection of fees for those purposes.

79. As a direct and proximate result of the Dealership's breaches, Plaintiff has suffered direct, incidental, and consequential damages, including his duplicative loan payments, the interest accruing on the Bank of America Loan, fees paid for services not performed, exposure of his credit to delinquency reporting, and loss of the use and benefit of his money and the Vehicle, in an amount to be determined at trial.

80. MCU, as holder, is subject to this claim to the extent of the amounts paid by Plaintiff under the RISC.

**SIXTH CAUSE OF ACTION**
**(Negligent Misrepresentation — Against the Dealership, in the Alternative)**

81. Plaintiff repeats and realleges paragraphs 1 through 80 as if fully set forth herein.

82. In the alternative to the Third Cause of Action, the Dealership, as a licensed motor vehicle dealer with exclusive knowledge of and control over the payoff and registration processes attendant to the transaction, and by reason of its special position of confidence and expertise on which consumers such as Plaintiff reasonably rely, owed Plaintiff a duty to exercise reasonable care in conveying accurate information concerning the material terms of the transaction.

83. The Dealership breached that duty by carelessly misrepresenting that it would pay off the Bank of America Loan, that the $175.00 documentation fee was

payable to New York State, and that the Vehicle would be registered with the fees collected.

84. Plaintiff reasonably relied on those representations to his detriment.

85. As a direct, proximate, and foreseeable result, Plaintiff has been damaged in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands a trial by jury on all issues so triable and respectfully requests that the Court enter judgment in his favor and against Defendants as follows:

a. awarding Plaintiff actual and compensatory damages in an amount to be determined at trial, including all payments made and to be made on the Bank of America Loan after July 10, 2026, all interest and charges accrued thereon, and all fees paid for services not performed;

b. directing the Dealership immediately to pay off the Bank of America Loan in full, including all interest and charges accrued since July 10, 2026, and to indemnify and hold Plaintiff harmless from any further amounts due thereon;

c. directing the Dealership immediately to complete the registration and titling of the Vehicle or to refund the registration, title, documentation, and related fees collected from Plaintiff;

d. awarding Plaintiff statutory damages pursuant to 15 U.S.C. § 1640(a)(2);

e. awarding Plaintiff the greater of his actual damages or fifty dollars, trebled up to one thousand dollars, together with injunctive relief, pursuant to General Business Law § 349(h);

f. awarding Plaintiff punitive damages on the Third and Fourth Causes of Action;

g. declaring that MCU, as holder of the RISC, is subject to all of Plaintiff's claims and defenses arising from the transaction, with recovery against MCU not to exceed the amounts paid by Plaintiff under the RISC, and that Plaintiff may set off his damages against any balance claimed under the RISC;

h. in the alternative, rescinding the RISC and the Purchase Agreement and awarding restitution of all amounts paid, including the value of Plaintiff's Trade-In equity;

i. awarding pre- and post-judgment interest, including interest pursuant to CPLR 5001 on the state-law claims;

j. awarding Plaintiff his reasonable attorneys' fees and the costs and disbursements of this action pursuant to 15 U.S.C. § 1640(a)(3) and General Business Law § 349(h); and

k. granting such other and further relief as the Court deems just and proper.

Dated: August 11, 2026
Long Island City, New York

**Kasell Law Firm**

By: /s/ David M. Kasell
David M. Kasell
*Attorney for Plaintiff Alfonso R. D'Abruzzo*
1038 Jackson Avenue, Suite #4
Long Island City, New York 11101
Office: (718) 404-6668
Email: david@kaselllawfirm.com